1  LATHAM & WATKINS LLP
   Daniel Scott Schecter (Bar No. 171472)
2    *daniel.schecter@lw.com*
   Noah L. Fischer (Bar No. 295428)
3    *noah.fischer@lw.com*
   355 South Grand Avenue
4  Los Angeles, California 90071-1560
   Telephone:  +1.213.485.1234
5  Facsimile:  +1.213.891.8763

6  Attorneys for Defendants
   Supportive Therapeutics, LLC
7  and Michael J. Morin

8

9              UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11

| 12 CANOPUS BIOPHARMA, INC., a Nevada corporation, CANOPUS CORPORATION, LTD., a Belize limited company, | Case No. 2:15-cv-09439-PSG (DTBx) |
|---|---|

12  CANOPUS BIOPHARMA, INC., a
13  Nevada corporation, CANOPUS
    CORPORATION, LTD., a Belize
14  limited company,

15              Plaintiffs,

16      v.

17  SUPPORTIVE THERAPEUTICS,
    LLC, a Delaware limited liability
18  company, MICHAEL J. MORIN, an
    individual, ICAP PATENT
19  BROKERAGE, LLC, a Delaware
    limited liability company, CASCADE
20  ESTATES, LTD., a Mauritius limited
    company, and DOES 1 through 20,
21  inclusive,

22              Defendants.

23

24

25

26

27

28

Case No. 2:15-cv-09439-PSG (DTBx)

**DEFENDANTS SUPPORTIVE
THERAPEUTICS, LLC'S AND
MICHAEL J. MORIN'S:**

**(1)  NOTICE OF MOTION AND
MOTION TO STAY FEDERAL
ACTION PENDING
RESOLUTION OF PARALLEL
STATE ACTION; AND**

**(2)  MEMORANDUM OF POINTS
AND AUTHORITIES IN
SUPPORT THEREOF**

[Request for Judicial Notice, Declarations
of Daniel Scott Schecter and David
Schmidt, and Proposed Order submitted
concurrently herewith]

Judge:        Hon. Philip S. Gutierrez
Hearing Date:  March 28, 2016
Hearing Time:  1:30 p.m.
Courtroom:    880

Complaint Filed:  October 27, 2015
Removal Date:    December 7, 2015

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on March 28, 2016, at 1:30 p.m., or as soon thereafter as the Court may hear the matter, before the Honorable Philip S. Gutierrez, in Courtroom 880 of the above-entitled Court, located at the Roybal Federal Courthouse at 255 East Temple Street, Los Angeles, California 90012, Defendants Supportive Therapeutics, LLC ("Supportive") and Michael J. Morin ("Morin") will and hereby do move this Court for an Order staying the above-captioned action in its entirety pending the resolution of a parallel proceeding before the Supreme Court of the State of New York for the County of New York, entitled *Cascade Estates Ltd. v. Canopus BioPharma, Inc. et al.* (Case No. 653976/2015).

For the reasons set forth in the supporting Memorandum of Points and Authorities, this motion is made pursuant to the Supreme Court's *Colorado River* doctrine (*Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976)) to promote wise judicial administration and to prevent duplicative litigation, inconsistent rulings, and waste of judicial resources.  This motion is based upon this Notice of Motion and Motion, the supporting Memorandum of Points and Authorities, the Request for Judicial Notice and Declarations of Daniel Scott Schecter and David Schmidt filed contemporaneously herewith, the pleadings and papers on file herein, oral argument and such other matters as may be considered by the Court.

This motion is made following conferences of counsel pursuant to Local Rule 7-3, which took place on December 7, 8, 21, and 31, 2015.

In addition, Supportive and Morin hereby adopt, incorporate herein by reference, and join in Defendants ICAP Patent Brokerage LLC's and Cascade Estate, Ltd.'s Motion to Dismiss Complaint, filed contemporaneously herewith, on the ground that Plaintiffs Canopus BioPharma, Inc. and Canopus Corporation, Ltd.

1  ("Plaintiffs") lack the capacity to sue, maintain, or prosecute this lawsuit in

2  California.  As explained in the Memorandum of Points and Authorities

3  accompanying that motion, Canopus BioPharma, Inc. is "FTB Forfeited" in

4  California and Canopus Corporation, Ltd. is not registered to do business in

5  California.  Accordingly, both Plaintiffs are barred from maintaining this or any

6  other lawsuit in California.  *See Weinstock v. Sinatra*, 379 F. Supp. 274, 275-77

7  (C.D. Cal. 1974); *United Medical Mgmt. v. Gatto*, 49 Cal. App. 4th 1732, 1737-38

8  (1996); Cal. Rev. & Tax Code § 23301; Cal. Corp. Code § 2203.

9  DATED:  January 11, 2016            Respectfully submitted,

10                                     LATHAM & WATKINS LLP

11

12                                     By  */s/ Daniel S. Schecter*

13                                         Daniel Scott Schecter
                                           Noah L. Fischer
14                                     Attorneys for Defendants Supportive
                                       Therapeutics, LLC and Michael J. Morin

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

I.    INTRODUCTION.................................................................................. 3

II.   BACKGROUND.................................................................................. 5

    A.   The Loan And IP Agreements. ............................................... 5

    B.   The Foreclosure Auctions. ..................................................... 6

    C.   Allegations Of The California Action. .................................... 7

    D.   The New York Action.............................................................. 7

III.  ARGUMENT ...................................................................................... 8

    A.   This Court Should Stay The California Action Pending The Outcome Of The New York Action In Order To Avoid Inconsistent Results And Preserve Judicial Resources. ................................................................................ 8

        1.   Neither Court Has Assumed Jurisdiction Over Any Property At Stake....................................................... 9

        2.   California Is An Inconvenient Forum...................... 10

        3.   A Stay Is Necessary Here To Avoid Piecemeal, Inconsistent Litigation And Substantial Duplication Of Efforts. ........................................... 10

        4.   Neither Action Has Proceeded Beyond The Pleading Stage. .................................................... 12

        5.   New York Law Governs The Threshold Ownership Issue.................................................... 13

        6.   The New York Court Will Adequately Protect The Rights Of All Litigants. ...................................... 14

        7.   A Stay Is Necessary To Prevent Plaintiffs' Forum Shopping. ................................................... 14

        8.   All Of The Claims Depend Upon The Resolution Of The Same Central Issue Of New York Law...................... 15

IV.   CONCLUSION ................................................................................. 16

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Am. Int'l Underwriters (Phillipines), Inc. v. Cont'l Ins. Co.*,
  843 F.2d 1253 (9th Cir. 1988) ..........................................................7, 8, 10

*Attwood v. Mendocino Coast Dist. Hosp.*,
  886 F.2d 241 (9th Cir. 1989) ..................................................................14

*Coalition for Clean Air. v. VWR Int'l, LLC*,
  922 F. Supp. 2d 1089 (E.D. Cal. 2013) ....................................................13

*Colorado River Water Conservation Dist. v. United States*,
  424 U.S. 800 (1976) ....................................................................2, 6, 7, 8

*El Centro Foods, Inc. v. Nazarian*,
  2010 U.S. Dist. LEXIS 49745 (C.D. Cal. Apr. 21, 2010) ...........................11

*Holder v. Holder*,
  305 F.3d 854 (9th Cir. 2002) ....................................................................7

*In re Countrywide*,
  542 F. Supp. 2d 1160 (C.D. Cal. 2008) ...........................................7, 11, 13

*Janopaul + Block Cos., LLC v. St. Paul Fire & Marine Ins. Co.*,
  830 F. Supp. 2d 976 (S.D. Cal. 2011) .......................................................11

*Jasmine Networks, Inc. v. Superior Court*,
  180 Cal. App. 4th 980 (2009) ..................................................................10

*Leyva v. Certified Grocers of California, Ltd.*,
  593 F.2d 857 (9th Cir. 1979) ....................................................................7

*Minco Inc. v. Combustion Eng'g, Inc.*,
  95 F.3d 1109 (Fed. Cir. 1996) ............................................................10, 14

*Morrow v. Microsoft Corp.*,
  499 F.3d 1332 (Fed. Cir. 2007) .................................................................9

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983) ....................................................................................7

*Nakash v. Marciano*,
  882 F.2d 1411 (9th Cir. 1989) ........................................................6, 7, 12, 13

*R.R. St. & Co. v. Transp. Ins. Co.*,
  656 F.3d 966 (9th Cir. 2011) ..........................................................7, 8, 13, 14

*Robinson v. Nestle Waters N. Am., Inc.*,
  2011 U.S. Dist. LEXIS 59206 (E.D. Cal. May 31, 2011) ...........................11

*Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*,
    402 F.3d 1198 (Fed. Cir. 2005) ................................................................. 10, 14

*Sea Prestigio, LLC v. M/Y Triton*,
    787 F. Supp. 2d 1116 (S.D. Cal. 2011) ....................................................... passim

*United Medical Mgmt. v. Gatto*,
    49 Cal. App. 4th 1732 (1996) ......................................................................... 2

*Weinstock v. Sinatra*, 379 F. Supp.
    274 (C.D. Cal. 1974) ....................................................................................... 2

## STATUTES

Cal. Corp. Code § 2203 .......................................................................................... 2

Cal. Rev. & Tax Code § 23301 ............................................................................... 2

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

iii

MOTION TO STAY FEDERAL ACTION PENDING
RESOLUTION OF PARALLEL STATE ACTION

I.        **INTRODUCTION**

This action should be stayed pending the resolution of an ongoing litigation filed in New York state court, which is the contractually mandated venue to resolve the threshold question of whether Plaintiffs Canopus BioPharma, Inc. ("Canopus Nevada") and Canopus Corporation, Ltd. ("Canopus Belize") (together, "Plaintiffs") own the trade secrets and intellectual property that form the basis for this entire action.

Plaintiffs allege that Defendants Supportive Therapeutics, LLC ("Supportive"), Michael J. Morin ("Morin"), and Cascade Estates, Ltd. ("Cascade") conspired to misappropriate trade secrets and related property in violation of a confidentiality agreement Morin entered into with one of the Plaintiffs.  These allegations are demonstrably false, but they also suffer from a more fundamental flaw: Plaintiffs have no right to assert them.  Plaintiffs do not own the trade secrets and intellectual property they claim to own or the right to seek redress for their infringement.  All of the trade secrets and intellectual property underlying Plaintiffs' claims, as well as the claims themselves, were pledged to Cascade as collateral for a loan.  When Canopus Nevada defaulted on the loan, Cascade foreclosed on the collateral, and retained a professional broker (Defendant ICAP Patent Brokerage, LLC ("ICAP")) to auction off the property. Cascade was the highest bidder at these auctions and, as such, became the rightful owner of all of Canopus Nevada's assets and certain assets belonging to Canopus Belize, including the very trade secrets and intellectual property on which this action is predicated and the right to sue for past infringements of such property.

Despite these fatal defects to Plaintiffs' standing and claims, they proceeded with this action.  In response, Cascade filed a breach of contract and declaratory judgment action in New York state court (the "New York Action") to resolve these questions of ownership and standing.  Under the loan and attendant security agreements between Cascade and Plaintiffs, New York is the exclusive forum for

1    any such disputes.  If Cascade prevails in the New York Action—as it should—this

2    action (the "California Action") will be rendered moot because Plaintiffs will have

3    no standing to claim misappropriation of any trade secret or proprietary

4    information.

5         Rather than waste judicial resources while this threshold issue has yet to be

6    resolved and risk inconsistent rulings, the Court should exercise its discretion to

7    stay the California Action in deference to the parallel New York Action.  Under the

8    doctrine first set forth by the Supreme Court in *Colorado River Water*

9    *Conservation Dist. v. United States*, 424 U.S. 800, 817-19 (1976), a federal court is

10   empowered to stay an action, pending the resolution of a concurrent state court

11   proceeding involving substantially the same issues and parties when concerns of

12   duplicative efforts, inconsistent results, and judicial economy so dictate.  This

13   doctrine squarely applies here in favor of a stay, because *all* of the claims in the

14   California Action are dependent upon a decision regarding the ownership of the

15   rights to the trade secrets and intellectual property that form the basis of those

16   claims.  That determination can only be made by a New York court per the parties'

17   loan agreements.  Accordingly, this action should be stayed pending the final

18   resolution of the New York Action.[1]

19

20

21

22

23

24   [1] This action cannot proceed for the independent reason that both Plaintiffs lack the
     capacity to sue in California.  According to the California Secretary of State's

25   public database (http://kepler.sos.ca.gov/), Canopus Nevada is "FTB Forfeited,"
     and Canopus Belize is not registered to do business in California.  As a result,

26   Plaintiffs cannot maintain any lawsuit in California.  *See Weinstock v. Sinatra*, 379
     F. Supp. 274, 275-77 (C.D. Cal. 1974); *United Medical Mgmt. v. Gatto*, 49 Cal.

27   App. 4th 1732, 1737-38 (1996); Cal. Rev. & Tax Code § 23301; Cal. Corp. Code §
     2203.  This ground for dismissal is more fully briefed in ICAP's and Cascade's

28   Motion to Dismiss Complaint, which Supportive and Morin join and incorporate
     herein by reference.

## II.   BACKGROUND

### A.   The Loan And IP Agreements.

Between July 2008 and April 2009, Cascade and Canopus Nevada executed several written loan documents (the "Loan Agreement") pursuant to which Cascade loaned Canopus Nevada a total of $3,180,000 (the "Loan"). *See* Request for Judicial Notice and Declaration of Daniel Scott Schecter ("RJN"), Ex. A ("NY Compl.") ¶¶ 7-43. As collateral for the Loan, Canopus Nevada pledged security interests in all of its assets (the "Collateral"). *Id.* ¶ 20; *see also* RJN, Ex. B ("Loan Agr.") §§ 4.1, 14. Canopus Nevada agreed that if it did not repay the principal amount of the loan plus accrued interest when they became due on September 8, 2010, Cascade was permitted to, among other things, take possession of and sell the Collateral. *See* Loan Agr. §§ 2.2(b), 8.1, 9.1, 9.2, 14.

As security for the Loan Agreement, Canopus Nevada and its parent company, Canopus Belize, each entered into intellectual property security agreements with Cascade on September 8, 2008 (the "IP Agreements"). NY Compl. ¶¶ 44-46; *see also* RJN, Exs. C-D ("IP Agrs."). In the IP Agreements, Plaintiffs granted Cascade security interests in all of their respective intellectual property and related rights (the "IP Collateral") including, without limitation:

- "***Any and all trade secrets***;"
- "Any and all copyright rights;"
- "Any and all design rights;"
- "All patents, patent applications, and like protections;"
- "Any trademark and servicemark rights;"
- "All mask works or similar rights;" and
- "***Any and all claims for damages by way of past, present and future infringements*** of any of the rights included above, with the right, but not the obligation, to sue for and collect such damages for said use or infringement of the intellectual property rights identified above."

1  IP Agrs. § 1 (emphasis added).[2]  In the event of default on the Loan, Cascade was

2  entitled to any of the remedies available to it under the terms of the agreement and

3  the New York UCC, including the right to take possession of and sell the IP

4  Collateral.  *Id.* §§ 7-8.

5      Plaintiffs expressly agreed that both the Loan Agreement and the IP

6  Agreements would be governed by New York law, and that they would submit to

7  the exclusive jurisdiction of a court located in New York, New York, for any

8  disputes regarding the parties' rights and obligations under the agreements.  Loan

9  Agr. § 11; IP Agrs. § 15.

10      **B.      The Foreclosure Auctions.**

11      In 2010, Canopus Nevada defaulted on the Loan.  NY Compl. ¶ 64.  When it

12  became clear that Canopus Nevada would not repay its substantial debt, Cascade

13  exercised its rights under the Loan Agreement and IP Agreements to foreclose on

14  the Collateral and IP Collateral, and retained ICAP to sell the property in two

15  public auctions administered pursuant to the applicable UCC procedures—one in

16  March 2014 and the other in August 2015 (the "Foreclosure Auctions").  *Id.* ¶¶ 65-

17  82.  Cascade notified Plaintiffs of the Foreclosure Auctions well before each took

18  place.  *Id.* ¶¶ 68-70, 76-80.

19      The assets up for sale at the March 2014 auction specifically included a

20  portfolio of techniques for the treatment of mucositis—a condition causing the

21  inflammation and ulceration of the mucous membranes lining the digestive tract—

22  as well as the rights to the compound "Oltipraz," which was developed to treat

23  mucositis.  *See* Declaration of David Schmidt ("Schmidt Decl."), Ex. A.  Any

24  Collateral or IP Collateral that was not part of the March 2014 auction was

25  subsequently sold in the August 2015 auction.  NY Comp. ¶ 76; Schmidt Decl., Ex.

26  B.  Cascade submitted the winning bid in both Foreclosure Auctions and took

27

28  _____

[2] Cascade perfected its security interests in the Collateral and IP Collateral.  NY Compl. ¶ 63.

1  ownership of all of the Collateral and IP Collateral. *Id.* ¶¶ 71-74, 81-86.  As a

2  result, Plaintiffs no longer possess any rights in the Collateral or IP Collateral. *Id.*

3  ¶ 86.

4        **C.**     **Allegations Of The California Action.**

5        Notwithstanding the results of the Foreclosure Auctions, Plaintiffs filed the

6  instant lawsuit in the Superior Court of the State of California on October 27, 2015

7  (Case No. BC 598451) alleging misappropriation of trade secrets involving the

8  development of Oltipraz and techniques for the treatment of mucositis—*i.e.*,

9  precisely the assets that Cascade foreclosed upon and now owns pursuant to the

10  terms of the Loan Agreement and IP Agreements.  *See generally* Plaintiffs'

11  Complaint ("CA Compl.").  The allegations in the Complaint focus on discussions

12  that Plaintiffs purportedly had with Morin regarding the development of Oltipraz,

13  and Morin's subsequent engagement with Supportive. *Id*.  Plaintiffs allege that

14  Morin entered into a Confidentiality Agreement (the "CDA") on March 2, 2012,

15  covering the exchange of certain confidential information for the purpose of

16  exploring a potential business relationship between Plaintiffs and Morin. *Id*. ¶¶ 10-

17  11.  Plaintiffs also aver that Morin violated the CDA by using the confidential

18  information to form Supportive and to further develop Oltipraz with the aid of

19  Cascade and without Plaintiffs' involvement. *Id.* ¶¶ 15-16.

20        Plaintiffs bring additional claims against Cascade and ICAP in an effort to

21  delegitimize the Foreclosure Auctions, and seek a declaratory judgment that they

22  continue to own the property that was auctioned off at the Foreclosure Auctions.

23  *Id.* ¶¶ 24-29, 57-61, 66-73.  Those claims plainly are subject to the New York

24  forum selection clauses in the Loan and IP Agreements.

25        **D.**     **The New York Action.**

26        On December 1, 2015, Cascade filed a lawsuit in the Supreme Court of the

27  State of New York (Case No. 653976/2015) seeking to enforce the Loan

28  Agreement, the IP Agreements, and the Foreclosure Auctions.  *See generally* NY

Compl.  In addition to seeking payment of Canopus Nevada's outstanding debt under the Loan, Cascade also seeks a declaratory judgment from the New York court that (1) Cascade is the proper owner of the Collateral and IP Collateral (the "Disputed Property"), (2) Plaintiffs have no right to pursue claims arising from the Disputed Property, and (3) Plaintiffs' counsel in the California Action lacks the authority to bring the action on behalf of Canopus Belize because neither of the directors of Canopus Belize have authorized the California Action.  *Id.* ¶ 1.

## III.   ARGUMENT

### A.   This Court Should Stay The California Action Pending The Outcome Of The New York Action In Order To Avoid Inconsistent Results And Preserve Judicial Resources.

Under the *Colorado River* doctrine, a federal court may stay or dismiss a federal proceeding pending the results of a concurrent state court proceeding due to considerations of "wise judicial administration."[3]  *Colorado River*, 424 U.S. at 817. These considerations include concerns of duplicative litigation, inconsistent results, and conservation of judicial resources.  *Id.* at 817-19.

The Ninth Circuit has identified eight non-exclusive factors to guide a District Court's discretion in assessing whether to apply *Colorado River* to stay or dismiss a case: (1) which court first assumed jurisdiction over any property at stake; (2) the inconvenience of the federal forum; (3) avoiding piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether federal law or state law provides the rule of decision on the merits; (6) whether the state court proceedings can adequately protect the rights of the federal litigants; (7) the desire to avoid forum shopping; and (8) whether the state court proceedings will resolve all issues before the federal court.  *R.R. St. & Co. v. Transp. Ins. Co.*, 656 F.3d 966,

---

[3] Although it is often said that federal courts have a "virtually unflagging obligation" to exercise jurisdiction, "the Ninth Circuit has commented that this statement 'somewhat overstates the law because in certain circumstances, a federal court may stay its proceedings in deference to pending state proceedings.'"  *Sea Prestigio, LLC v. M/Y Triton*, 787 F. Supp. 2d 1116, 1118 (S.D. Cal. 2011) (quoting *Nakash v. Marciano*, 882 F.2d 1411, 1415 (9th Cir. 1989)).

978-79 (9th Cir. 2011).  "These factors are to be applied in a pragmatic and flexible way, as part of a balancing process rather than as a 'mechanical checklist.'"  *Am. Int'l Underwriters (Phillipines), Inc. v. Cont'l Ins. Co.*, 843 F.2d 1253, 1257 (9th Cir. 1988) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983)).  To that end, "one factor may be accorded more weight than another depending on the circumstances of the case."  *In re Countrywide*, 542 F. Supp. 2d 1160, 1172 (C.D. Cal. 2008) (quoting *Holder v. Holder*, 305 F.3d 854, 870-71 (9th Cir. 2002)).

As set forth below, the *Colorado River* factors overwhelmingly favor staying the California Action here, particularly when viewed in light of the principal aims of the *Colorado River* doctrine—to avoid duplicative and inconsistent litigation and to conserve judicial resources.  Indeed, all of the claims in this action are dependent on the results of the pending proceeding in New York state court, where Cascade seeks to confirm (i) its ownership of the Disputed Property and (ii) the impermissibility of the California Action.  There is simply no reason to waste the time and resources of this Court while these threshold issues have yet to be resolved.  Accordingly, the California Action should be stayed.[4]

### 1. Neither Court Has Assumed Jurisdiction Over Any Property At Stake.

The first factor in the *Colorado River* analysis is not relevant in this case because neither court has assumed jurisdiction over any property.  *See Nakash*, 882 F.2d at 1415 n.6 (holding this factor irrelevant when "[t]here is no *res* in control of either court").

---

[4] In addition to the *Colorado River* doctrine, the Court may issue a stay based on its inherent power to control its docket.  *See Leyva v. Certified Grocers of California, Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979) ("A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case.").  Whether considered under the *Colorado River* doctrine or the Court's inherent power, a stay is both the fairest and most efficient course of action here.

## 2.    California Is An Inconvenient Forum.

A stay is warranted because of the inconvenience of proceeding in this forum, rather than the contractually agreed upon New York forum.  To assess this factor, courts consider the residencies of the parties and potential witnesses, the locations of the alleged conduct underlying the claims in the litigation, and access to evidence.  *Am. Int'l Underwriters*, 843 F.2d at 1258.

The instant action's connection to California is insignificant when compared with the central importance of New York law to all claims.  In fact, the action's only alleged ties to California are Canopus Nevada's supposed principal place of business, CA Compl. ¶ 2, and the location of the Foreclosure Auctions that occurred in Los Angeles, California, in March 2014 and August 2015, *id.* ¶ 24, 26. No other alleged act occurred in California, and all other parties are located in far off states and countries, including Belize, Mauritius, and Massachusetts. Additionally, the significant overlap between the parties, witnesses, and evidence in the California and New York Actions will make litigating parallel matters on opposite coasts particularly burdensome.  To proceed with the litigation in California will thus cause substantial inconvenience to Defendants and witnesses, while providing little countervailing convenience to Plaintiffs.

## 3.    A Stay Is Necessary Here To Avoid Piecemeal, Inconsistent Litigation And Substantial Duplication Of Efforts.

The need to avoid piecemeal and inconsistent litigation compels the issuance of a stay.  Absent a stay, duplication of judicial efforts and the risk of inconsistent dispositions of the same issues—the exact risk the *Colorado River* doctrine was intended to avoid—is almost assured.  *See Colorado River*, 424 U.S. at 819; *see also R.R. St.*, 656 F.3d at 979-80 (affirming dismissal of federal action on grounds that "avoidance of piecemeal litigation weighs significantly against jurisdiction"); *Am. Int'l Underwriters*, 843 F.2d at 1258 (affirming dismissal of federal action where "[t]he danger of piecemeal litigation . . . is real").

1    In *Sea Prestigio*, the Southern District gave special weight to this factor in

2    determining that a stay was appropriate under circumstances similar to those here.

3    787 F. Supp. 2d 1116.  The parallel federal and state proceedings in *Sea Prestigio*

4    focused on the defendants' alleged default on a loan and the resulting foreclosure

5    of the loan's collateral.  *Id.* at 1118-19.  The claims in both cases were either

6    directly related to the interpretation of the loan agreement, which was governed by

7    state law, or "derivative" of a finding that the defendants were in default.  *Id*.  In

8    ordering the stay, the Southern District emphasized that "staying the case would

9    eliminate the possibility of the state and federal courts both deciding, and possibly

10   reaching inconsistent conclusions regarding, [the] key issue of default under the

11   loan agreement." *Id.* at 1119.

12   As in *Sea Prestigio*, the risk of inconsistent and repetitive litigation here

13   compels the issuance of a stay.  Both the California and New York Actions seek a

14   declaratory judgment of who owns the Disputed Property following Canopus

15   Nevada's default.  *See* CA Compl. ¶¶ 66-69; NY Compl. ¶¶ 96-106.  Because this

16   issue is central to both cases, and would necessarily be decided by two different

17   courts should this action proceed, a denial of the stay would inevitably lead to

18   duplicate proceedings and other judicial efforts, and would risk inconsistent

19   results.

20   Moreover, as was the case in *Sea Prestigio*, all other claims are dependent

21   on the New York court's determination of who owns the right to sue for

22   misappropriation of the Disputed Property.  None of Plaintiffs' claims for relief in

23   this action can proceed until it is determined who owns this right.  *See Morrow v.*

24   *Microsoft Corp.*, 499 F.3d 1332, 1340 (Fed. Cir. 2007) ("When a party holds all

25   rights or all substantial rights, it alone has standing to sue for infringement.").  The

26   IP Agreements expressly provided that the IP Collateral included "all claims for

27   damages by way of ***past***, present, and future infringements."   IP Agrs. § 1(g)

28

1   (emphasis added).[5]  If the New York Action determines that Cascade legitimately
2   purchased the IP Collateral, Cascade alone can sue for past infringements of any of
3   Plaintiffs' formerly-owned trade secrets and related property. *See, e.g.*, *Schreiber*
4   *Foods, Inc. v. Beatrice Cheese, Inc.*, 402 F.3d 1198, 1201-03 (Fed. Cir. 2005)
5   (holding plaintiff lacked standing to sue for past infringement where assignment of
6   rights "explicitly included an assignment of all causes of action"); *Minco Inc. v.*
7   *Combustion Eng'g, Inc.*, 95 F.3d 1109, 1117 (Fed. Cir. 1996) (noting the right to
8   sue for past infringement is transferred when "the assignment agreement manifests
9   an intent to transfer this right").  Any judicial resources expended in the California
10  Action will have served no purpose.  Therefore, this factor heavily favors staying
11  all claims pending the outcome of the New York Action.

12   **4.      Neither Action Has Proceeded Beyond The Pleading Stage.**

13          A stay is appropriate because the California and New York Actions have yet
14  to make any significant progress.  The priority of suit *Colorado River* factor "must
15  be applied in a pragmatic, flexible manner, so that priority is not measured
16  exclusively in terms of which complaint was filed first, but rather in terms of how
17  much progress was actually made in the state and federal actions." *Am. Int'l*
18  *Underwriters*, 843 F.2d at 1258.  The dates of filing carry little weight when the
19  state and federal proceedings have made the same relative progress. *Id.*

20          Here, the California Action was filed (in state court) shortly before the New
21  York Action; however, both cases are in their very early stages, and have
22  proceeded, to date, in relative lockstep.  No answer has been filed in either action,
23  no discovery has been taken, and no rulings have been made.

24

25

26   [5] This is in stark contrast to a case where a party assigning its rights to trade secrets
    expressly retains the right to sue for past misappropriation of the trade secrets. *See*
27   *Jasmine Networks, Inc. v. Superior Court*, 180 Cal. App. 4th 980, 1010 (2009)
    (holding plaintiff had standing to sue for misappropriation of trade secrets under
28   CUTSA where transfer agreement explicitly reserved plaintiff's right to sue for
    misappropriation arising pre-transfer).

## 5.   New York Law Governs The Threshold Ownership Issue.

Because New York law governs the key issue of ownership of the Disputed Property, a stay of this California Action is warranted.  Although federal courts routinely apply state law, this Court has recognized that a state court applying its own state law often is better suited to hear a case than a federal court sitting in another state, especially when the applicable state law issues are complex.  *In re Countrywide*, 542 F. Supp. 2d at 1172-73; *see also Robinson v. Nestle Waters N. Am., Inc.*, 2011 U.S. Dist. LEXIS 59206, at *13 (E.D. Cal. May 31, 2011) ("[I]t is clear that state law issues dominate this claim, and that the state court is better situated to resolve these questions.").  "Moreover, where—as here—state law issues predominate, '[g]ranting the stay is . . . consistent with the federal court's discretion to decline to exercise jurisdiction out of consideration for federal-state comity.'"  *Sea Prestigio*, 787 F. Supp. 2d at 1119 (quoting *El Centro Foods, Inc. v. Nazarian*, 2010 U.S. Dist. LEXIS 49745, at *7 (C.D. Cal. Apr. 21, 2010)).

The critical issue in this case regarding ownership of the Disputed Property and related claims must be determined according to New York state law in a New York court, as contractually agreed by the parties.  *See* NY Compl. ¶¶ 40-41, 58; Loan Agr. § 11; IP Agrs. § 15.  This will require the interpretation and application of both New York state contract law and the complex procedures set out in the New York UCC, which govern the sale of the Disputed Property.  IP Agrs. § 8.  Consequently, New York is a "particularly suitable forum" to hear the matter.  *See In re Countrywide*, 542 F. Supp. 2d at 1173.  In fact, Plaintiffs do not bring a single claim under federal law, and "[t]he absence of federal law claims in this case . . . weighs in favor of a stay."  *Janopaul + Block Cos., LLC v. St. Paul Fire & Marine Ins. Co.*, 830 F. Supp. 2d 976, 985 (S.D. Cal. 2011).

**6.**     **The New York Court Will Adequately Protect The Rights Of All Litigants.**

Because there are no federal claims in either action, the sixth factor—whether the state court will adequately protect the rights of the federal litigants—justifies a stay. *See Sea Prestigio*, 787 F. Supp. 2d at 1119 (finding this factor weighed in favor of stay where all but one claim arose under state law). Plaintiffs chose to file their claims in state court (the California Action was later removed to this Court on diversity grounds), and brought only state law claims. Plaintiffs would be hard-pressed to argue that a New York state court cannot adequately protect their interests, given that they contractually agreed that the central issue here—ownership of the Disputed Property—would be exclusively governed by New York state law in New York courts. And as parties to the New York Action, Plaintiffs can directly defend their position in those state court proceedings. The New York state court is well situated to protect the rights of all litigants.

**7.**     **A Stay Is Necessary To Prevent Plaintiffs' Forum Shopping.**

Plaintiffs' attempt to circumvent the express forum selection provisions of their contractual agreements with Cascade lends additional support to a stay. *See Nakash*, 882 F.2d at 1417 ("[A]n attempt to forum shop or avoid adverse rulings by the state court . . . weighs strongly in favor of abstention."). Pursuant to the mandatory forum selection and choice of law clauses in the Loan Agreement and IP Agreements, Plaintiffs should have filed for a declaration of their rights to the Disputed Property in New York state court before proceeding with any other claims. Instead, Plaintiffs asked a California court to determine those rights, in violation of the agreements. By contrast, Cascade filed its complaint in New York for no other reason than to comply with its contractual obligations. *See* NY Comp. ¶¶ 40-41, 58. The Court should hold Plaintiffs to their bargain.

### 8.   All Of The Claims Depend Upon The Resolution Of The Same Central Issue Of New York Law.

Finally, a stay is necessary because all of the claims in the California and New York Actions are dependent on the New York state court's ruling regarding the parties' rights to the Disputed Property.  To satisfy this factor of the *Colorado River* analysis, the federal and state actions must be "substantially similar." *Nakash*, 882 F.2d at 1416; *see also id.* ("We agree that exact parallelism does not exist, but it is not required.").  The parties need not be "identical" so long as the resolution of one case is likely to resolve "many" of the issues in the case.  *Id.*; *accord In re Countrywide*, 542 F. Supp. 2d at 1170 (finding that class actions with different named plaintiffs were substantially similar in part because "the claims raise very similar sets of substantive issues").

Courts routinely find that this factor favors a stay when the federal and state actions are "highly interdependent," *R.R. St.*, 656 F.3d at 979, meaning that there is "a substantial likelihood that a judgment in the state action could resolve the federal [action]," even if there are some matters that cannot be heard in the state court.   *See Sea Prestigio*, 787 F. Supp. 2d at 1119; *Coalition for Clean Air. v. VWR Int'l, LLC,* 922 F. Supp. 2d 1089, 1110 (E.D. Cal. 2013) (staying federal action where "the two cases are interdependent, as a decision regarding interpretation of [the relevant statute] in either case would likely impact the outcome of the other").  In *Sea Prestigio*, the Southern District ordered a stay even though one of the claims in the case could not be adjudicated in the state court, reasoning that the claim was "likely dependent on the resolution of state law issues" and would be preserved during the stay.  787 F. Supp. 2d at 1119.

Here, the California and New York Actions are inextricably linked.  Both cases depend upon the resolution of the same central issue: the ownership of the Disputed Property once belonging to Canopus that was foreclosed upon and subsequently purchased by Cascade at the Foreclosure Auctions.  Both cases seek a

1  declaratory judgment of the respective rights of substantially the same parties

2  based on the same set of facts.  Critically, a judgment in the New York Action

3  finding that Cascade is the lone holder of the Disputed Property will bar *all* of

4  Plaintiffs' claims in the California Action—not just the claim for declaratory

5  relief—because the Disputed Property expressly encompasses the right to sue for

6  past infringement of trade secrets.  *See Schreiber Foods*, 402 F.3d at 1202-03;

7  *Minco*, 95 F.3d at 1117.  The interdependency of the claims in the California

8  Action and the claims in the New York Action thus warrant a stay pending

9  determination of the ownership rights of the parties.  In the unlikely event that the

10  New York Action fails to render the California Action entirely moot, a stay will

11  not prevent Plaintiffs from pursuing any remaining claims in the California Action

12  at a later date.  *See R.R. St.*, 656 F.3d at 978 n.8; *Attwood v. Mendocino Coast Dist.*

13  *Hosp.*, 886 F.2d 241, 243-45 (9th Cir. 1989).

14      In sum, each of the *Colorado River* factors either decidedly supports the

15  issuance of a stay or is irrelevant to the circumstances of this case.  In particular,

16  "the avoidance of piecemeal litigation, federal-state comity, and adequacy of the

17  state proceeding to protect the parties' rights strongly favor abstention." *Sea*

18  *Prestigio*, 787 F. Supp. 2d at 1121.  Plaintiffs should not be permitted to maintain

19  this action to enforce property rights that are not theirs to enforce, and the New

20  York Action is the only appropriate forum to resolve this fundamental issue of

21  standing.  The stay should be granted.

22  **IV.**  **CONCLUSION**

23      For the foregoing reasons, Supportive and Morin respectfully request that

24  this action be stayed pending the outcome of the New York Action.

25

26

27

28

1   DATED:  January 11, 2016          LATHAM & WATKINS LLP

2

3                                       By  */s/ Daniel S. Schecter*
                                          Daniel Scott Schecter
4                                         Noah L. Fischer
                                        Attorneys for Defendants Supportive
5                                       Therapeutics, LLC and Michael J. Morin

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28